

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     Case No. 05-CR-240

MICHAEL CARROLL,

        Defendant.

## PLEA AGREEMENT

    1.     The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Mario F. Gonzales, Assistant United States Attorney, and the defendant, Michael Carroll, individually and by attorney Kirk Obear, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

    2.     The defendant has been charged in two counts of a thirty-eight-count indictment which alleges violations of Title 18, United States Code, Sections 1961 and 1962(d), Title 21, United States Code, Sections 841, and 846, and Title 26, United States Code, Sections 5841, 5861(d), and 5871.

    3.     The defendant has read and fully understands the charges contained in the indictment and fully understands the nature and elements of the crimes with which he has been charged and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to Count Two of the indictment set forth in full as follows:

See attached Exhibit A

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

The Milwaukee chapters of the Almighty Latin King Nation is an enterprise which satisfies the definition of enterprise found at 18 U.S.C. § 1961(4), as a "group of individuals associated in fact." In the United States, the national organization is composed of individual chapters located in various cities throughout the country, with the Midwest Region controlled by the Chicago/Indiana Latin King organization. Presently in Wisconsin, there are four subsets of the Latin Kings: the 19th Street Kings, the Sawyer Kings, the Wild Walker Kings and the 23rd St. Kings. Numerous cooperating witnesses and the defendant himself admit that he is a member of the 19th Street, Milwaukee chapter of the Latin King street gang. The defendant further admits that he conspired with other Latin King gang members to commit at least two qualifying criminal acts in furtherance of the criminal enterprise. The Latin Kings are a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, robbery, extortion and distribution of controlled substances, and which operated principally on the south side of Milwaukee. The following criminal acts were acts in furtherance of that conspiracy.

On the evening of June 25, 2003, Latin Kings including CARLOS LOPEZ and MICHAEL CARROLL were driving in an auto looking for enemies of the Latin Kings. In the area of 1001 W. Arthur, Milwaukee, Wisconsin the Latin Kings encountered R.A., who was riding his bike. WARREN WELLS related that R.A. had the letter "C" on his hat that was turned to the right, signifying a rival gang member (the Spanish Cobras) to the Latin Kings. EMMANUEL MARTINEZ shot R.A. from the passenger side of the auto as they passed by him. Law enforcement did recover a "CHICAGO" baseball cap at the scene.

The Latin Kings continued to drive in the area, looking for other enemies of the gang. When they arrived in the area of 1908 W. Burnham, Milwaukee, Wisconsin, they observed a group of people and flashed their gang sign at them. One of the individuals of the group flashed back a different gang sign. The Latin Kings again passed the above location; at that time MICHAEL CARROLL shot at the subject who flashed the gang sign, while hanging out the vehicle's window. CARROLL then passed the handgun to Carlos LOPEZ who then also intentionally fired shots at this individual also while hanging out the car's window. Two victims Jorge Perez-Santos and Jose Gutierrez were both struck by these gunshots and suffered serious bodily injury.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this offense.

## PENALTIES

6. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Count Two,

twenty years and $250,000; The count also carries a mandatory special assessment of $100.00, and a maximum of five years of supervised release. The parties further recognize that a restitution order may be entered by the court.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney, including any possibility that the defendant may qualify as a career offender under the sentencing guidelines.

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the remaining counts of the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of Conspiracy to Commit RICO as set forth in Count Two, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant knowingly conspired to conduct or participate in the conduct of the affairs of the Milwaukee Latin Kings, an enterprise, through a pattern of racketeering activity as described in Count Two;
>
> Second, that the Milwaukee Latin Kings were an enterprise; and
>
> Third, that the activities of the Milwaukee Latin Kings would affect interstate commerce.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

4

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in Exhibit A. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

14. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects

the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty.

### Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in count two is 30 under Sentencing Guidelines Manual §§2A2.1(a)(2), and (b)(1)(C).

### Acceptance of Responsibility

17. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offense prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual

§ 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Career Offender

18. The parties acknowledge, understand, and agree that the defendant may qualify as a career offender under the sentencing guidelines and further understand, acknowledge, and agree that the defendant may not move to withdraw the guilty plea solely as a result of a determination that he is a career offender.

### Sentencing Recommendations

19. Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

21. The parties agree to recommend a sentence within the applicable sentencing guideline range, as determined by the court.

### Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States

Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 and 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

25. The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorneys Office with completed financial forms which will be provided by FLU, and will provide any documentation required by those forms. The defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision.

### Fine

26. The parties agree to recommend to the sentencing court that a nominal fine consistent with the defendant's ability to pay be imposed against the defendant

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Forfeiture

28. The defendant agrees that all properties listed in the indictment, and/or bill of particulars constitute the proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement. The parties agree that the forfeiture of the defendant's properties as described in the indictment, information and/or bill of particulars will be determined by the court prior to or at the time of sentencing.

### DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendants guilt beyond a reasonable doubt.

    d.    At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

    e.    At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of each offense to which he will plead guilty and thereby may be deprived of certain rights,

including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement or the Stipulation of Facts Relative to Sentencing, included in this plea agreement, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## DEFENDANTS COOPERATION

38. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

40. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 2/22/08

_____
MICHAEL CARROLL
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 2/22/08

_____
KIRK OBEAR
Attorney for Defendant

For the United States of America:

Date: 2/22/08

_____
STEVEN M. BISKUPIC
United States Attorney

Date: 2-22-08

_____
MARIO F. GONZALES
Assistant United States Attorney

## ATTACHMENT A

### COUNT TWO

### Conspiracy to Commit RICO

**THE GRAND JURY FURTHER CHARGES:**

14. The paragraphs of Sections I, II, III, and IV of Count One of this indictment are realleged and incorporated by reference as though fully set forth herein.

1. At various times relevant to this Indictment, the defendants named in Count Two and others known and unknown, were members and associates of the Latin Kings, a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, robbery, extortion and distribution of controlled substances, and which operated principally on the south side of Milwaukee.

2. The Latin Kings, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4) (hereinafter "the enterprise"), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

17. From on or about January 1, 1998, and continuing until at least September 27, 2005, in the State and Eastern District of Wisconsin, and elsewhere,

**GREGORIO ACOSTA, a/k/a "Junior,"**
**NICHOLAS ACOSTA, a/k/a "Nick,"**

ALAN ANDERSON, a/k/a "Icy White,"
RICHARD ALVA, a/k/a "Ricky,"
RAMON ALVARADO, a/k/a "Lil Wolfy,"
CARLOS AVILA,
CARLOS BALENTINE, a/k/a "Fro,"
ARMONDO BARRAGAN, a/k/a "Mondie,"
JORGE BARRAGAN, a/k/a "Champ,"
DANIEL J. BARTELT, a/k/a "D.J.,"
SCARLETT BLUCHER,
CRAIG BURNETT,
JOHNNY BURNETT,
MICHAEL CARROLL,
FLORENTINO CASTILLO, a/k/a "Boy,"
ADRIAN CERDA, "A-Town,"
DESMOND CORNELIUS,
DAVID DOMINGUEZ, a/k/a "T,"
HUGO DEL PORTILLO, a/k/a "Hugo,"
WILLIAM FUHR, a/k/a "Squirt Guns,"
JOHN GARCIA, a/k/a "Bobo,"
LUIS GARCIA, a/k/a "Chewy,"
JUAN GONZALEZ, a/k/a "Jay,"
RAMON GONZALEZ, a/k/a "Platinum,"
ROGELIO GUARNERO, a/k/a, "Mafi"
KENNETH HILL, a/k/a "Boobie,"
RICHARD KERNER, a/k/a "Twin,"
CARLOS LOPEZ, a/k/a "Gordy/Gordo,"
BRENT MANVILLA, a/k/a "Gucci,"
EMMANUEL MARTINEZ, a/k/a "Tu-Tu,"
MARTIN MARTINEZ, a/k/a Pinky,"
GONZALO MEJIA, a/k/a "Wetto,"
ISRAEL MORENO, a/k/a "Willow,"
JULIO MUNIZ, a/k/a "Fat Fat,"
JORGE PALACIO, a/k/a "Socio,"
BOBBY PALACIOS, a/k/a "Bob,"
ANDRE PRZEWORSKI, a/k/a "Dre,"
KADAM D. RAJAPHOUMI, a/k/a "China Boy,"
JOSE A. RAMIREZ, a/k/a "2 Bit,"
MIGUEL RUIZ, a/k/a "KiKi,"
SADAM SALEM, a/k/a "Walla,"
JOE A. SANCHEZ, "Joey,"
JOSE SOTO, "Juno,"

JESUS TELLO, a/k/a "Spider,"
ALBERTO VALLEJO, a/k/a "Berto,"
TIMOTHY VALLEJO, a/k/a "Tim,"
REGINO VIASANA, a/k/a "pistoletto,"
WARREN WELLS, a/k/a "Lauren/Rince,
THOMAS WYLIE, a/k/a "Tommy Guns,"

The defendants together with other persons known and unknown, being members and associates of the racketeering enterprise described in paragraphs 2 through 17 that is, the Latin Kings, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code §1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity involving multiple acts indictable under the provisions of Title 18, United States Code, sections, 1201, 1512, 1513; and multiple acts involving violations of the laws of the State of Wisconsin, chargable under the provisions of Wisconsin Statutes, Sections 940.01, 939.32. 940.01, 939.31, 943.32, 943.02 and 940.31; and multiple acts involving the distribution of controlled substances including cocaine, cocaine base in the form of "crack" cocaine and marijuana in violation of the laws of the United States, including Title 21, United States Code, Sections 841 and 846.

18.     It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).